ORDERED.

Dated: September 06, 2018

_____
Jerry A. Funk
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

CHRISTOPHER MICHAEL SAMPSON,

    Debtor.

_____/

Case No.: 3:18-bk-104-JAF

Chapter 11

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came before the Court upon Bank of America's (the "Bank") Motion for Relief from the Automatic Stay with Respect to 200th Street Property (the "Motion") (Doc. 27). The Court conducted a trial on the Motion on May 24, 2018. In lieu of oral argument, the Court directed the parties to submit proposed memoranda in support of their respective positions. Upon the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

On January 21, 2013, the Debtor borrowed the principal amount of $540,000.00 from the Bank (the "Sampson Loan") (Bank's Ex. 1). The Sampson Loan was secured by a mortgage on real property and a home located at 5188 200th Street, Lake City, FL 32024 (the "Property")

owned by the Debtor. (Bank's Ex. 1). The Property is the Debtor's homestead. CMS Professional Staffing, Inc., CMS Pro Staff, Inc., CMS Professional Transport, Inc., and Samson Investments, LLC (collectively, the "Guarantors") each executed and delivered a Continuing and Unconditional Guaranty dated June 21, 2013 by which they guaranteed the Debtor's indebtedness under the Sampson Loan. (Bank's Ex. 1). While the Debtor is obligated to the Bank on account of multiple other loans and personal guaranties, none of the loans are cross-collateralized with the Sampson Loan, and the Property is the only collateral securing the Sampson Loan.

The Sampson Loan matured by its own terms on June 21, 2015. (Bank's Ex. 1). In November 2015, the Bank filed a foreclosure complaint against the Debtor and the Guarantors as to the Property. (Debtor's Ex. 1). The parties entered into a forbearance agreement, which expired in May 2017.

On January 15, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Along with the voluntary petition, the Debtor filed his bankruptcy schedules. On Schedules A and D, the Debtor stated that the value of the Property is $496,423.00. (Bank's Ex. 2). The Debtor also scheduled over $24,000.00 of claims of the Suwanee County Tax Collector for 2015-2017 property taxes secured by the Property. (Bank's Ex. 2).

As of the Petition Date, the Debtor owed the Bank $633,105.02 on account of the Sampson Loan, comprised of principal of $540,000.00 and interest of $93,152.02. This amount does not include late fees, attorney's fees, and costs. Neither the Debtor nor the Guarantors made any payments on the Sampson Loan between its June 21, 2015 maturity date and the Petition Date.

On March 28, 2018, the Debtor filed a Plan of Reorganization (the "Plan"), which proposes that CMS Professional Staffing, Inc., the Debtor's wholly owned company, and CMS Professional Transport, Inc., a company in which the Debtor has 75% ownership, will make a monthly payment of $2,300.00 to the Bank for 60 months. (Bank's Ex. 2). Any outstanding principal balance, fees, charges, or other amounts due will be paid in full by the Debtor within 61 months of the confirmation date. (Bank's Ex. 2). The plan proposes an interest rate of 4%. (Bank's Ex. 2).

At the trial on the Motion the Debtor testified that he obtained the $496,423.00 value, which he listed on his schedules, from the Suwannee County Property Appraiser's website but does not know what the value of the Property is. The Debtor testified that he personally believes the Property is worth $2 million dollars based upon the time and money he spent on the Property over the course of ten years but recognizes that his opinion is biased. The Bank did not offer any independent evidence of value but indicated in its proof of claim, which was filed on March 6, 2018, that "[t]he current value of the [Property] is unknown, but a 2016 appraisal reflected a value of $680,000." In the Motion, which was also filed on March 6, 2018, the Bank indicated it "does not know the current value of the Property but, based on a 2016 appraisal, believes the value may be in excess of $650,000.00." The Bank indicated in its trial brief that the amount owed to it, exclusive of legal fees and costs, as of the May 24, 2018 trial date was $649,711.98.

## Conclusions of Law

The Bank seeks relief from the automatic stay under 11 U.S.C. §§ 362(d)(1) and (d)(2), which respectively provide:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).  Because the Bankruptcy Code does not define cause, the determination of whether to grant relief from the stay based on cause is a discretionary one which is made on a case by case basis.  In re Boardwalk, Inc., 520 B.R. 126, 132 (Bankr. M.D. Fla. 2014).  The party seeking relief from the stay must make a prima facie showing of cause after which the burden shifts to the opposing party to prove its entitlement to the continued protections of the automatic stay.  Froman v. Fein (In re Froman), 566 B.R. 641, 652 (S.D.N.Y. 2017).

     The Bank argues that cause exists to lift the automatic stay because the Plan is not confirmable as it seeks to modify the Bank's claim with respect to the Sampson Loan, which claim is secured solely by the Bank's security interest in the Property.  That is, it attempts to "cure" arrearages on a first mortgage secured only by the Debtor's principal residence, which matured pre-petition.  The Debtor argues that the Plan does not propose to modify the terms of the Sampson Loan, such as reducing the principal balance due, changing the interest rate, or stripping the Bank of its rights.  Instead, he argues the Plan merely seeks to maintain regular payments and cure the arrearage within sixty months.

     Section § 1123(b)(5) of the Bankruptcy Code provides as follows: "(b) Subject to subsection (a) of this section, a plan may—(5) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence…." 11 U.S.C. 1123(b)(5).  Section 1123(b)(5) prevents individual Chapter 11 debtors from modifying the rights of holders of secured claims secured only by a security interest in the debtor's principal residence.  Section 1123(b)(5) does not affect the right of an individual

Chapter 11 debtor to cure a pre-petition residential mortgage arrearage through a Chapter 11 plan, while remaining current on post-petition payments. In re Lennington, 288 B.R. 802, 806 (Bankr. C.D. Ill. 2003). However, a Chapter 11 plan's proposal to extend the terms and maturity date of a fully matured loan is a modification rather than a cure and is barred by § 1123(b)(5). In re Crump, 529 B.R. 106, 111-12 (Bankr. S.C. 2015); In re Clay, 204 B.R. 786, 792 (Bankr. N.D. Ala. 1996) (holding that § 1123(b)(5) prohibits the "curing" of default of balloon mortgage payment in Chapter 11 reorganization).[1] Because the Plan does not propose a treatment of the Bank's claim secured by the Property that is in compliance with the Bankruptcy code and the Debtor has put forward no evidence as to how he could confirm a plan that allows him to retain the Property, the Court finds that cause exists to grant relief from the automatic stay. Having determined that the Bank is entitled to relief from the automatic stay under § 362(d)(1), the Court need not address § 362(d)(2). The Court will enter a separate Order consistent with these Findings of Fact and Conclusions of Law.

Attorney Kathleen L. DiSanto is directed to serve a copy of these Findings of Fact and Conclusions of Law on interested parties and file a proof of service within 3 days of entry of the Order.

---

[1] The language in § 1322(b)(2) is identical to that in § 1123(b)(5). However, § 1322(c)(2) creates an exception to § 1322(b)(2)'s anti-modification provision and provides that "in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for payment of the claim…" Without § 1322(c)(2), § 1322(b)(2) would bar the extension of payments on a debt that was or became due prior to the petition date or during the repayment period in Chapter 13 cases. Crump, 529 B.R. at 111-12. Although § 1123(b)(5) was added to the Bankruptcy Code at the same time as § 1322(c)(2), Congress did not include a corollary to § 1322(c)(2) in Chapter 11. Id.